## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

—————————————————————————

TANYA STEPHENSON,                                Civil Action No.: _19-cv-722_____

                Plaintiff,                        COMPLAINT

v.

NEW YORK STATE GAMING                            Jury Trial Demanded
COMMISSION,

                Defendant.

—————————————————————————

       Plaintiff Tanya Stephenson ("Plaintiff" or "Ms. Stephenson"), by and through her undersigned counsel, files this Complaint and Jury Demand against Defendant New York State Gaming Commission ("Defendant" or "NYSGC"):

### NATURE OF THE ACTION

       This is an action under Title VII of the Civil Rights Act of 1964, as amended, Title I of the Civil Rights Act of 1991, as amended, and New York Human Rights Law, N.Y. Executive Law §§ 290, et seq. ("New York Human Rights Law"), as amended, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Ms. Stephenson, who was adversely affected by such practices.

### JURISDICTION AND VENUE

       1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e et seq. ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, as amended.

2.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state claims brought pursuant to New York Human Rights Law, in that said claims are so related to the federal law claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative facts with the federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

3.       Venue is proper in this judicial district under 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e et seq. because Defendant NYSGC maintains offices in this district, conducts business in this district,  a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district,  the alleged unlawful employment practices were committed here, and employment records and other documents relevant to those practices are maintained and administered here.

4.      The Western District of New York has personal jurisdiction over Defendant NYSGC because Defendant maintains offices in this District, does business in New York and in this District, and because many of the acts complained of and giving rise to the claims alleged herein occurred in this District.

5.      Plaintiff has exhausted her administrative remedies and complied with all statutory prerequisites to her Title VII and New York Human Rights Law claims.

6.      On or about November 10, 2014, Plaintiff filed a Charge of Discrimination against Defendant NYSGC with the Equal Employment Opportunity Commission ("EEOC") based on sex and a hostile work environment resulting from discrimination based on sex.(the

"First Charge").  A true and correct copy of Plaintiff's First Charge is attached hereto as **Exhibit A**.

7.     On or about August 18, 2015, Plaintiff filed a second Charge of Discrimination with the EEOC based on sex and retaliation by Defendant NYSGC (the "Second Charge"), arising, in part, upon retaliation experienced by Plaintiff for filing the First Charge.  A true and correct copy of Plaintiff's Second Charge is attached hereto as **Exhibit B**.

8.     On November 29, 2018, the EEOC issued written Determinations on the First Charge and the Second Charge, finding it reasonable that Defendant NYSGC discriminated against Plaintiff on the basis of her gender, and retaliated against her.   A true and correct copy of said Determinations are attached hereto as **Exhibits C** and **D**, respectively.

9.      By notice dated March 7, 2019, the EEOC issued a Notice of Right to Sue with respect to both the First Charge and the Second Charge. A true and correct copy of said Notice of Right to Sue is attached hereto as **Exhibit E**.

10.     This Complaint is made within ninety days of said Notice of Right to Sue.

## PARTIES

11.     At all times relevant hereto, Plaintiff was and is a resident of the State of New York, and an employee of Defendant.

12.     Upon information and belief, at all times relevant hereto, Defendant NYSGC was and is an agency of the State of New York that oversees casino gaming, charitable gaming, horse racing, lottery, and video lottery terminals in New York State, including overseeing gaming operations at Indian casinos operated by tribes located within New York State such as the Seneca Niagara Casino where Plaintiff works.

3

13.     Upon information and belief, Defendant NYSGC was formed in February 2013 when New York State merged the New York State Racing and Wagering Board, and the New York Lottery.

14.     Upon information and belief, Defendant NYSGC maintains control, oversight, and direction over its operations and employment practices.

15.     At all times hereinafter mentioned, Defendant NYSGC employed 20 or more individuals.

16.     At all times hereinafter mentioned, Defendant NYSGC, was and still is an "employer" within the meaning of 42 U.S.C. § 2000e(b), and N.Y. Executive Law § 292(5), and subject to Title VII and New York Human Rights Law.

## FACTUAL BACKGROUND

17.     Plaintiff was hired by a predecessor to Defendant NYSGC on or about November 21, 2005 as a Gaming Operations Inspector, which is an entry level position where the job duties are to review and monitor gaming operations, and report findings to higher level staff.

18.     Plaintiff currently holds the position of Senior Gaming Inspector, where the job duties are to serve as lead gaming operations inspector on an assigned shift, and to have the opportunity to possibly train, develop, and supervise Gaming Operations Inspectors.

19.     Since the commencement of her employment, Plaintiff has been subjected to discrimination and different terms and conditions of employment when compared to her male coworkers.  Including the following:

3583512, 1, 065793.0001

**Failure to Offer Training Based upon Sex**

a.  On or about July 31, 2014, Plaintiff received an email from her coworker, Brian

  Maurer, stating that their supervisor, Darrell Thompson, was soliciting employees

  interested in a training opportunity.

b.  Plaintiff responded that she was interested in availing herself of such opportunity.  No

  training was ever offered to Plaintiff.  Instead, on August 5, 2014, Plaintiff was

  informed by a coworker that her request for training was denied by Mr. Thompson

  due to her having a child.  Upon information and belief, Mr. Thompson stated "Why

  would she want to leave her kid to go to training."

c.  Plaintiff complained of this comment to Art Askins, Indian Gaming Manager for

  Defendant, stating that it was discriminatory.  In response, Mr. Askins merely stated,

  "you know he is my most problematic supervisor." Upon information and belief, no

  further action was taken in response to Plaintiff's complaint.

**Affording Training Opportunities Based Upon Sex**

d.  Defendant afforded a male employee, Brian Maurer, a Senior Gaming Inspector, with

  additional training opportunities to train for a potential supervisory position that were

  not made available to female employees, including Plaintiff.

e.  The training Mr. Maurer was afforded included training on timekeeping systems,

  attending meetings with supervisors regarding key control observations, reviewing

  monthly audit reports, training employees, reviewing Gaming Inspector reports,

  generating reports for supervisors, revising applications, reviewing patron complaints,

  attending an annual supervisor/management meeting in Schenectady, NY, training in

5

and/or authored inspector/senior evaluations, reviewed job applicants resumes and interviewed applicants for a vacated inspector position at the Seneca Niagara Casino.

f.   Upon information and belief, Defendant contends that Mr. Maurer volunteered for these training opportunities, yet no such volunteer opportunities were made known to or offered to female employees, including Plaintiff.

**Discrimination in Hiring Practices Based upon Sex**

g.   On or about August 15, 2014, Defendant posted an opening for the position of Supervising Gaming Operations Inspector.

h.   Previously when this position was posted it required "[t]hree years of experience consisting of two years enforcing gaming regulations where you are primarily monitoring gaming activity between the public and casino staff and/or the public's use of gaming equipment **AND** one year of any supervisory experience."

i.   Plaintiff and at least two other female employees applying for the position had prior supervisory experience in their work histories that met the criteria.  Upon information and belief, Brian Maurer did not.

j.   On or about August 15, 2014, Plaintiff applied for the position of Supervising Gaming Operations Inspector.

k.   On or about September 10, 2014, Plaintiff and another female employee traveled to Schenectady, New York for interviews for this position.  Plaintiff learned that the interviews given to the female applicants were markedly different from the interviews given to two male applicants, Brian Maurer and Jason Toth, one week earlier on September 3, 2014, in that the male applicants were introduced around the office, and taken to lunch, whereas Plaintiff and her female colleague were not.  Upon

6

information and belief, while being introduced around the office the comments made

by the person doing the introductions caused Mr. Toth to conclude that Mr. Maurer

was going to be awarded the position.

l.   On or about October 3, 2014, Mr. Thompson directly asked Plaintiff if she planned on

having more children.  Soon thereafter, Mr. Askins informally advised Plaintiff that

Mr. Maurer had been awarded the position, and she should congratulate him.

m.   Upon information and belief, on or about October 14, 2014, Patrice Williams, another

female Senior Gaming Inspector, was informed by Arthur Askins, Indian Gaming

Manager for Defendant, that despite her being the lead candidate for the Supervising

Gaming Operations Inspector position she had not been awarded the job, and that

instead Brian Maurer was being given the position.  In response, Ms. Williams stated

to Mr. Askins, "Are you telling me they chose a male over three more qualified

females? He has no supervisory experience."  In response Askins admitted that

Maurer had been "groomed" for the position (i.e. been afforded training and other

opportunities not afforded to Plaintiff or other female employees).

n.   Mr. Maurer was awarded the Supervising Gaming Operations Inspector position

despite Plaintiff and two other female employees/applicants being more qualified.

o.   In reviewing the posting for the Supervising Gaming Operations Inspector position,

Plaintiff realized that it had been altered from the previous time this same position

was posted.

p.   The job posting was intentionally altered by Defendant to eliminate the previous

requirement of one year of supervisory experience, which Plaintiff had, and Mr.

Maurer did not, and instead included an unapproved minimum qualification of three

7

3583512, 1, 065793.0001

years of experience as a Senior Gaming Inspector, which meant that Mr. Maurer could then apply for the position.

q.  The position of Senior Gaming Inspector does not provide the requisite supervisory experience previously required for the position of Supervising Gaming Operations Inspector.  Upon information and belief, the qualifications were intentionally changed by Defendant to allow Mr. Maurer to apply for the Supervising Gaming Operations Inspector position.

r.  In or about October 2014, Plaintiff thereafter contacted the New York State Department of Civil Service about the change in the posting's minimum qualifications and was informed that the change in the minimum qualifications was not approved by that department and therefore the posting for the Supervising Gaming Operations Inspector was invalid.

s.  Upon information and belief, on or about October 17, 2014, Defendant was contacted by the NYS Department of Civil Service and informed that the August 15, 2014 posting eliminating the requirement of one year of supervisory experience and substituting three years' experience as a Senior Gaming Inspector was invalid and the process for filling the positon would have to be re-done.

t.  On November 10, 2014, Plaintiff filed the First Charge.

u.  From October 2014 to January 2015, Mr. Maurer was never officially promoted to the new position.  Instead, he was allowed to act "out of title", meaning he was given the duties of a Supervising Gaming Operations Inspector without the official title.

v.  In or about January 2015, Defendant again posted an opening for Supervising Gaming Operations Inspector, again with the three years as a Senior Gaming

3583512, 1, 065793.0001

Inspector requirement and without the one-year supervising/management experience requirement.  Upon information and belief, Defendant pressed forward in getting the qualifications for the posting changed and approved to again allow Mr. Maurer to qualify for and be promoted to the position.

w.  Plaintiff again applied for the position, but this time was not interviewed.

x.  Brian Maurer was thereafter awarded the position on or about May 21, 2015.

### Retaliation

y.  On or about August 4, 2015, Mr. Maurer sent an email advising that he was anticipating taking about 2 weeks leave.

z.  On or about August 8, 2015, Plaintiff sent an email to Mr. Askins asking him why she and other Senior Gaming Inspectors were not be offered the opportunity to perform his duties in his absence, which were similar to the opportunities afforded to Mr. Maurer under similar circumstances prior to his promotion.

aa. On August 10, 2015, Mr. Askins responded via email stating: "As a result of your EEOC complaint, it has come to our attention that even the mere selection of a person to perform supervisor duties may expose our agency to discrimination charges … rather than expose our agency to further liability or create additional processes, no one will be given supervisory duties on a temporary basis and management will use existing management personnel to fill those duties on a temporary basis."  A true and correct copy of said August 10, 2015 email is attached hereto as **Exhibit F**.

bb. This statement by Mr. Askins runs in direct contravention of the job duties and responsibilities of a Senior Gaming Inspector, like Plaintiff, which includes the

9

duty/opportunity "to perform the more difficult assignments, and may be asked to

supervise in the absence of Supervising Gaming Operations Inspector."

cc. Upon information and belief, Defendant has elected not to afford such training/

higher responsibility opportunities to Plaintiff in retaliation for filing her First Charge.

dd. As a result of this conduct, Plaintiff thereafter filed the Second Charge on August 18,

2015.

20.    Based upon the foregoing, on November 29, 2018, the EEOC issued the two

Determinations with respect to the First Charge and Second Charge, finding reasonable cause

that Defendant discriminated against Plaintiff on the basis of gender (female) and in retaliation

for her previously filing the First Charge.

21.    After failed attempts at conciliation, the EEOC issued the aforesaid Notice of

Right to Sue.

**FIRST CLAIM FOR RELIEF**
**(Sexual Discrimination and Hostile Work Environment in Violation**
**of Federal Law)**

22.    Plaintiff repeats and realleges paragraphs 1 through 21 in full and with the same

force and effect as if fully set forth herein.

23.    Defendant has engaged in intentional gender discrimination in the terms and

conditions of the Plaintiff's employment and created a hostile work environment based upon

Plaintiff's sex.

24.    Defendant's conduct violates Title VII.

25.    The Plaintiff has filed this action under Title VII within ninety (90) days after

receipt of her "Notice of Right to Sue" letter from the EEOC.

3583512, 1, 065793.0001

26.    Defendant's discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige in an amount to be determined at trial.

27.    Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of Federal Law)

28.    Plaintiff repeats and realleges paragraphs 1 through 27 in full and with the same force and effect as if fully set forth herein.

29.    Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

30.    Plaintiff made informal and formal complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on sex.

31.    As a result of Plaintiff's complaints, Defendant's agents and employees took materially adverse actions against Plaintiff.

32.    Defendant's adverse actions constituted retaliatory workplace harassment.

33.    Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

34.    As a direct, legal and proximate result of Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

11

### THIRD CLAIM FOR RELIEF
### (Sexual Discrimination/Hostile Work Environment in Violation of
### New York Human Rights Law)

35.     Plaintiff repeats and realleges paragraphs 1 through 34 in full and with the same force and effect as if fully set forth herein.

36.     Defendant was Plaintiff's employer within the meaning of those laws.

37.     Defendant denied Plaintiff the benefit of employment, including all favorable conditions and emoluments thereof and created and allowed to exist a hostile, intolerable workplace based on sex.

38.     Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

39.     As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff suffered adverse employment consequences.

40.     Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment and in an amount to be determined at trial.

### FOURTH CLAM FOR RELIEF
### (Retaliation in Violation of N.Y. Human Rights Law)

41.     Plaintiff repeats and realleges paragraphs 1 through 40 in full and with the same force and effect as if fully set forth herein.

42.     Section 296.1(a) of the New York Human Rights Law prohibits retaliation against an employee who seeks to assert rights under the Human Rights Law.

43.     Defendant was Plaintiff's employer within the meaning of the Human Rights Law.

12

44.    Plaintiff complained to Defendant about the mistreatment based on gender by employees and managers of Defendant.

45.    In response, Plaintiff was subjected to additional mistreatment until her working conditions became unbearable, all with the knowledge and approval of Defendant for the purpose of punishing her for attempting to assert her rights.

46.    Defendant's actions were taken under circumstances giving rise to an inference of discrimination.

47.    As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered adverse employment consequences. Plaintiff was caused to suffer lost past and future wages, professional opportunities, other valuable benefits and emoluments of employment as well as to endure severe emotional pain and trauma, all to her detriment in an amount to be determined at trial.

### JURY TRIAL DEMAND

48.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

WHEREFORE, Plaintiff demands judgment on her First and Second Claims for relief as follows:

A.  On her First and Second Claims for Relief:

  a.  Awarding Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

  b.  Awarding Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

  c.  Awarding Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

13

    d.  Awarding temporary, preliminary, and permanent injunctive relief prohibiting Defendant from engaging in further discriminatory conduct;

    e.  Awarding Plaintiff her costs and expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988; and

    f.  Awarding such other and further relief as the Court deems just and proper.

B.  On her Third and Fourth Claims for Relief:

    a.  Awarding Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

    b.  Awarding Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

    c.  Awarding temporary, preliminary, and permanent injunctive relief prohibiting Defendant from engaging in further discriminatory conduct;

    d.  Awarding Plaintiff her costs and expenses of litigation, including reasonable attorneys' fees, pursuant to N.Y. Executive Law § 297(10); and

    e.  Awarding such other and further relief as the Court deems just and proper.

Dated:  June 4, 2019
       Buffalo, New York

                            LIPSITZ GREEN SCIME CAMBRIA LLP

                            By: s/Jeffrey F. Reina, Esq._____
                                Jeffrey F. Reina, Esq.
                                Diane M. Perri Roberts, Esq.
                            *Attorney for Plaintiff Tanya Stephenson*
                              42 Delaware Avenue, Suite 120
                              Buffalo, New York 14202
                              (716) 849-1333
                              droberts@lglaw.com
                              jreina@lglaw.com