**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**TANYA STEPHENSON,**

                         **Plaintiff,**

          **-v-**                                              **19-CV-722V(Sr)**

**NEW YORK STATE GAMING COMMISSION,**

                         **Defendant.**

───────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. Lawrence J.

Vilardo, in accordance with 28 U.S.C. § 636(b), for all pretrial matters and to hear and

report upon dispositive motions. Dkt. #5. The case is currently assigned to the Hon.

John L. Sinatra. Dkt. #9.


          Plaintiff, a Senior Gaming Inspector for the New York State Gaming

Commission ("Gaming Commission"), alleges that she has been subjected to disparate

treatment and a hostile work environment due to sex and subjected to retaliation after

complaining about discrimination. Dkt. #1. Plaintiff's complaint alleges the following

causes of action: (1) sex discrimination in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq*.,("Title VII"); (2) hostile work environment in violation of

Title VII; (3) retaliation in violation of Title VII; (4) sex discrimination in violation of the

New York Human Rights Law ("NYHRL"); (5) hostile work environment in violation of the

NYHRL; and (6) retaliation in violation of the NYHRL. Dkt. #1.

Defendant seeks dismissal of all of plaintiff's causes of action except her Title VII sex discrimination claim. Dkt. #4-1, p.5. Specifically, defendant argues that plaintiff's NYHRL claims are barred by the doctrine of sovereign immunity and plaintiff's complaint does not plausibly allege retaliation or a hostile work environment. Dkt. #4-1.

For the following reasons, it is recommended that defendant's motion to dismiss be granted with respect to plaintiff's NYHRL claims and Title VII hostile work environment claim and denied with respect to plaintiff's Title VII retaliation claim.

BACKGROUND

Plaintiff was hired as a Gaming Operations Inspector in November of 2005 and is currently a Senior Gaming Inspector. Dkt. #1, ¶¶ 17-18. On or about July 31, 2014, a coworker, Brian Maurer, emailed plaintiff that their supervisor, Darrell Thompson, was soliciting employees interested in a training opportunity. Dkt. #1, ¶ 19a. Plaintiff responded that she was interested, but was informed by a coworker that Mr. Thompson stated, "Why would she want to leave her kid to go to training." Dkt. #1, ¶ 19b. Plaintiff complained to Art Askins, Indian Gaming Manager, but no action was taken and plaintiff was not offered the training opportunity. Dkt. #1, ¶ 19b. Mr. Maurer was subsequently afforded additional opportunities to train for potential supervisory positions which were not offered to female employees, including plaintiff. Dkt. #1, ¶ 19d. For example, Mr. Maurer attended training on timekeeping systems and evaluations; attended meetings with supervisors regarding key control observations, reviewing key control observations, reviewing monthly audit reports, training employees, reviewing Gaming Inspector reports, generating reports for supervisors, revising applications and

reviewing patron complaints; attended an annual supervisor/management meeting in Schenectady, New York; and reviewed job applications and interviewed applicants. Dkt. #1, ¶ 19e.

On August 15, 2014, the position of Supervising Gaming Operations Inspector was posted. Dkt. #1, ¶ 19g. Mr. Maurer and another male employee, Jason Toth, interviewed for the position in Schenectady, New York on September 3, 2014. Dkt. #1, ¶ 19k. Plaintiff and another female employee[1] interviewed for the position on September 10, 2014. Dkt. #1, ¶ 19k. Plaintiff subsequently learned that Indian Gaming Manager, Art Askins, introduced the male applicants around the office and took them to lunch when they were in Schenectady for their interviews, but did not do the same for plaintiff and her female coworker were not. Dkt. #1, ¶ 19k & Dkt. #1-1, p.3.

On October 3, 2014, plaintiff's supervisor, Mr. Thompson, directly asked plaintiff if she planned on having more children. Dkt. #1, ¶ 19l. Soon thereafter, Mr. Askins announced that Mr. Maurer had been awarded the promotion. Dkt. #1, ¶ 19l. When another female employee[2] inquired why Mr. Maurer, who had no supervisory

---

[1] Patrice Williams also commenced a lawsuit claiming sex discrimination, hostile work environment and retaliation based upon similar factual allegations, including the fact that she interviewed for this position with another female employee in Schenectady, New York on September 10, 2014. 19-CV-720.

[2] Patrice Williams alleges that she inquired why Mr. Maurer, who had no supervisory experience, was awarded the promotion over three more qualified females and that Mr. Askins responded that Mr. Maurer had been groomed for the position. 19-CV-720 at Dkt. #1, ¶18k. Ms. Williams alleges that she informed Mr. Askins that the decision to "groom" Mr. Maurer and not offer such an opportunity to her was a form of gender discrimination. Dkt. #1, ¶ 18m.

experience, was awarded the promotion over three more qualified females, Mr. Askins responded that Mr. Maurer had been groomed for the position. Dkt. #1, ¶ 19m.

Upon reviewing the posting for the position, plaintiff realized that it had been altered from prior postings of the same position to require three years experience as a Senior Gaming Inspector, which Mr. Maurer possessed, instead of the prior requirement of one year of supervisory experience, which Mr. Maurer did not posses. Dkt. #1, ¶ 18o-q. At least three female employees, including plaintiff, possessed the supervisory experience previously required for the position. Dkt. #1, ¶ i. Plaintiff contacted the New York State Department of Civil Service ("Civil Service"), to inquire about the change in the job posting and was informed that the change in minimum qualifications had not been approved by the Civil Service, rendering the posting for the position invalid. Dkt. #1, ¶ 19r. The Civil Service informed the Gaming Commission that the position would have to be re-posted. Dkt. #1, ¶ 19s. As a result, Mr. Maurer was not promoted, but was permitted to perform the duties of a Supervising Gaming Operations Inspector. Dkt. #1, ¶ 19u.

On November 10, 2014, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), through the New York State Division of Human Rights ("NYSDHR"), complaining that she had been subjected to different terms and conditions of employment than her male coworkers. Dkt. #1-1, pp.2-3.

In January of 2015, after obtaining approval from the Civil Service to eliminate the supervisory experience requirement, the Gaming Commission posted an

opening for Supervising Gaming Operations Inspector. Dkt. #1, ¶ 19v. Plaintiff applied

for the position, but was not interviewed. Dkt. #1, ¶ 19w. Brian Maurer was awarded the

position on May 21, 2015. Dkt. #1, ¶ 19x.


On August 4, 2015, Mr. Maurer advised that he would be taking leave for

two weeks. Dkt. #1, ¶ 19y. By email to Mr. Askins dated August 6, 2015, plaintiff noted

that when the prior supervisor was absent, Mr. Maurer "handled leave requests,

scheduling, routine operations, and any emergency situations," and asked Mr. Askins

> why a Senior Inspector at this Site has not been chosen to
> perform those duties while [Mr. Maurer] is off on leave? As
> you are aware Mr. Askins, two SNC Senior Inspectors you
> interviewed for the Site Supervisor position already have
> extensive management experience and are seasoned
> Supervisors.

Dkt. #1-1, p.18. By email dated August 10, 2015, Mr. Askins responded:

> As a result of your EEOC complaint, it has come to our
> attention that even the mere selection of a person to perform
> supervisory duties may expose our agency to discrimination
> charges. The process may be considered "grooming" a
> person for a role and therefore, such assignments must be
> done through a formal selection process that is non-
> discriminatory, according to EEOC Investigator Maureen
> Kielt. Rather than expose our agency to further liability or
> create additional processes, no one will be given supervisory
> duties on a temporary basis and management will use
> existing management personnel to fill those duties on a
> temporary basis.
>
> Furthermore, as noted in your EEOC [sic], assigning
> temporary supervisory duties to senior inspectors is out-of-
> title work. The Gaming Commission sees no emergency
> basis to assign this out-of-title work and therefore will
> prudently refrain from assigning such out of title work [sic].

Dkt. #1-1, p.18.

Plaintiff filed a second charge of discrimination on August 18, 2015, complaining that

> Although [defendant] claims that Maurer "volunteered" to assist [defendant] in the supervisory duties while the selection process for Site Supervisor was taking place, this opportunity to "volunteer' was not offered to any female employee; even after I and other females questioned why we were not offered the same opportunities. It is clear that [defendant] was training and preparing Maurer for the Site supervisor position without providing fair and impartial opportunity to females . . . who[] expressed interest in gaining the same opportunities afforded to Maurer.

Dkt. #1-1, p.7. Plaintiff further complained that the Gaming Commission's refusal to allow her to perform Mr. Maurer's duties during his absence was in retaliation for her prior EEOC complaint. Dkt. #1-1, p.7. Plaintiff noted that the job duties of a Senior Gaming Inspector include "may be asked to supervise in the absence of Supervising Gaming Operations Inspector." Dkt. #1, ¶ 19bb. Plaintiff also complained that since the filing of the EEOC charges, she has been ostracized by her peers. Dkt. #1-1. p.7.

On November 29, 2018, the EEOC determined that there was reasonable cause to believe that the Gaming Commission discriminated against plaintiff on the basis of her gender and in retaliation for filing a previous charge of discrimination. Dkt. #1-1, pp.11 & 14.

## DISCUSSION AND ANALYSIS

### Fed. R. Civ. P. 12(b)(1)

Defendant moves to dismiss plaintiff's NYHRL claims as barred by the doctrine of sovereign immunity. Dkt. #4-1, pp.5-6.

Plaintiff responds that these claims were brought before this court to promote judicial economy by avoiding parallel state and federal litigation. Dkt. #7, pp.24-25.

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when the district court lacks the statutory or constitutional power to adjudicate it. *Markarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To defeat a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Id.*

As a general rule, state governments and their agencies, such as the Gaming Commission, may not be sued in federal court unless they have waived the sovereign immunity afforded them by the Eleventh Amendment to the United States Constitution or there has been a valid abrogation of that immunity by Congress. *Woods v. Roundout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, (2d Cir. 2006). New York has not waived its Eleventh Amendment immunity with respect to claims commenced in federal court pursuant to the NYHRL. *Allessi v. N.Y. State Dep't of Corrs & Cmty. Supervision,* 16 F. Supp.3d 221, 226 (W.D.N.Y. 2014). Accordingly, it is recommended that plaintiff's NYHRL claims be dismissed, without prejudice, for lack of subject matter jurisdiction. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (12(b)(1) dismissal for lack of federal subject matter jurisdiction must be without prejudice).

-7-

**Fed. R. Civ. P. 12(b)(6)**

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A Court may take judicial notice of an EEOC charge and agency determination. *Muhammad v. New York City Transit Auth.,* 450 F. supp.2d 198, 204-05 (E.D.N.Y. 2006)..

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In the context of employment discrimination, the complaint need not contain specific facts to

establish a *prima facie* case of discrimination, but must allege enough facts to state a claim to relief that is plausible on its face. *Allessi*, 16 F. Supp.3d at 226-27.

Retaliation

Defendant moves to dismiss plaintiff's retaliation claim on the ground that plaintiff has not plausibly alleged an adverse employment action because defendant's decision to rescind shift coverage for supervisors on leave was a reasonable defensive measure rather than a materially adverse employment action. Dkt. #4-1, pp.7-11. In other words, defendant argues that plaintiff cannot sustain a claim of retaliation based upon defendant's decision to discontinue a practice she complained was discriminatory. Dkt. #4-1, p.7. Defendant also argues that the denial of a single opportunity to act as a temporary supervisor following a policy change applied to all employees, did not alter any terms and conditions of employment, and would not dissuade a reasonable employee from complaining about discriminatory practices. Dkt. #4-1, pp.9-11.

Plaintiff responds that defendant's failure to afford her the opportunity to gain supervisory experience during Mr. Maurer's leave of absence does not fall within the scope of defensive measures. Dkt. #7, pp.12-16. Plaintiff further responds that it is plausible that the denial of the opportunity to assume supervisory duties could deter a reasonable worker from making or supporting a charge of discrimination. Dkt. #7, pp.9-11. Moreover, plaintiff complains that after she complained of discrimination, she was denied an interview for the re-posted Senior Gaming Operations Inspector position. Dkt. #7, pp.11-12.

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual based on race, color, religion, sex or national origin.  42 U.S.C. §2000e-2(a). The anti-retaliation provision of Title VII forbids an employer from discriminating against an employee because that employee opposed any practice made unlawful by Title VII or made a charge, testified, assisted or participated in a Title VII proceeding or investigation.  42 U.S.C. §2000e-3(a). To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action. *Kelly v. Howard I. Spapiro & Assocs.Consulting Eng'rs*, 716 F.3d 10, 14 (2d Cir. 2013). "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Benedith v. Malverne Union Free Sch. Dist*., 38 F. Supp.3d 286, 322 (E.D.N.Y. 2014). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee."  *Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 568 (2d Cir. 2011). For retaliation claims, an adverse employment action is defined as one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). This definition is broader than the standard for claims of discrimination in that an adverse employment action for purposes of retaliation claims need not affect the terms and conditions of employment. *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 90 (2d Cir. 2015). The causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001).

Plaintiff engaged in protected activity when she complained to Mr. Askins about Mr. Thompson's response to her interest in a training opportunity and when she filed a charge with the EEOC on November 10, 2014 that defendant engaged in discrimination on the basis of gender when it afforded Mr. Maurer opportunities to learn the job duties of a Supervising Gaming Operations Inspector but denied such opportunities to female employees. Mr. Askins was obviously aware of the EEOC charge when he cited it as the basis for denying plaintiff the opportunity to perform supervisory duties during Mr. Maurer's absence. In as much as Mr. Maurer's opportunity to engage in the duties of Supervising Gaming Operations Inspector was cited by Mr. Askins as justification for awarding him the promotion, it is plausible that denying plaintiff the opportunity Mr. Maurer had been afforded would dissuade a reasonable employee from complaining about the discriminatory manner in which training opportunities are offered. Moreover, Mr. Askins specifically cited the EEOC charge as the cause of his determination to deny the request that Senior Gaming Inspectors be allowed to perform the duties of Supervising Gaming Operations Inspector during Mr. Maurer's absence. Thus, plaintiff has plausibly alleged that defendant's refusal to allow female employees to engage in supervisory duties during Mr. Maurer's absence was retaliatory and should be afforded the opportunity to discover whether defendant actually amended its policy for out-of-title work or only prevented female employees from performing out-of-title work. The Court notes, for example, that plaintiff alleges that subsequent to her charge to the EEOC, and in spite of the fact that the Civil Service had invalidated his promotion, Mr. Maurer was allowed to continue to perform the duties of a Supervising Gaming Operations Inspector.

Accordingly, it is recommended that defendant's motion to dismiss plaintiff's retaliation claim be denied.

Hostile Work Environment

Defendant moves to dismiss plaintiff's hostile work environment claim on the ground that plaintiff's allegations do not rise to the level of severe or pervasive. Dkt. #4-1, pp.11-14. Moreover, defendant argues that plaintiff's allegations fail to support the inference that the environment of which she complained was due to her sex. Dkt. #4-1, pp.14-15.

Plaintiff responds that she has alleged sufficient facts to plausibly suggest that her workplace environment was hostile to female employees and that male employees were afforded more advantageous conditions of employment. Dk. #7, pp.19-24.

To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive, *i.e.*, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex. *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007). Determination as to whether a work environment is hostile is based upon the totality of circumstances, including: (1) frequency of the discriminatory conduct; (2) severity of the conduct; (3) whether the conduct is threatening and humiliating or a mere offensive utterance; and

(4) whether it unreasonably interferes with an employee's work performance. *Id.* The plaintiff must also allege a basis for imputing the objectionable conduct to the employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

Plaintiff has failed to allege sufficient facts to plausibly allege that her working environment was objectively hostile. A failure to promote, without more, may not stand as grounds for a hostile work environment. *Campbell v. County of Onondaga*, 04-CV-1007, 2009 WL 3163498, at *22 (N.D.N.Y. Sept. 29, 2009), *citing Trezza v. Hartford, Inc*., 98 CIV 2205, 1998 WL 912101, at *4 (S.D.N.Y. Dec. 30, 1998) (failure to promote does not impact workplace environment). Moreover, two remarks by a supervisor regarding plaintiff's status as a parent fails to demonstrate objective severity or pervasiveness. *See Baron v. Winthrop*, 211 Fed. App'x 16, 17 (2d Cir. 2006) (series of remarks made by plaintiff's supervisor evidencing bias against women not sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment so as to constitute a hostile work environment); *Tongalson v. Dreyfus Serv. Corp*., 04 Civ. 2308, 2005WL 356805, at *5 (S.D.N.Y. Feb. 14, 2005) (regular comments that women with children belong at home falls short of demonstrating hostile work environment). Finally, plaintiff's allegation that she has been ostracized by her peers is impermissibly vague and fails to allege causation or impute the conduct of her peers to her employer. *See Boza-Meade v. Rochester Hous. Auth*., 170 F. Supp.3d 535, 547 (W.D.N.Y. 2016) (vague allegations that co-workers made fun of plaintiff insufficient to plausibly allege hostile work environment). Accordingly, it is recommended that defendant's motion to dismiss plaintiff's claim of hostile work environment be granted.

CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss (Dkt. #4), plaintiff's NYHRL and Title VII hostile work environment causes of action be granted and defendant's motion to dismiss plaintiff's Title VII retaliation claim be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v.*

*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:    Buffalo, New York
          December 14, 2021

          s/ H. Kenneth Schroeder, Jr.
          **H. KENNETH SCHROEDER, JR.**
          **United States Magistrate Judge**