UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TANYA STEPHENSON,

Plaintiff,

v.

19-CV-722

NEW YORK STATE GAMING COMMISSION

**DECISION & ORDER**

Defendant.

---

## INTRODUCTION

On December 12, 2025, United States Magistrate Judge Kenneth Schroeder, Jr., to whom this case is referred pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), issued a Report and Recommendation ("R&R"), 19-CV-722 at ECF No. 74, addressing the parties' cross motions for summary judgment. ECF No. 49 and 50. Plaintiff also sought sanctions for destruction of certain documents occurring on December 12, 2014. Judge Schroeder recommended denial of the cross motions for summary judgment and that this Court find that Defendant engaged in spoliation with further briefing on the appropriate sanction. Defendant filed timely objections, ECF No. 79; Plaintiff filed a response, ECF No. 85; and Defendant filed a Reply, ECF No. 88.

For the reasons that follow, Defendant's objections are SUSTAINED IN PART and OVERRULED IN PART. The Court adopts the R&R, except for the recommendation that the Court find that Defendant engaged in spoliation.

## BACKGROUND

The parties' familiarity with the factual and procedural background of this case are presumed. The following facts, as taken from the R&R, are briefly restated. Plaintiff started her employment with Defendant, the New York State Gaming Commission ("NYSGC"), on November 21, 2005. ECF No. 49-1 ¶ 17. Prior to that, Plaintiff worked for the New York State Parks, where she had supervisory and managerial experience. ECF No. 50-68, ¶ 2. Plaintiff was initially hired by NYSGC as a Gaming Inspector at Seneca Niagara Casino and was promoted to Senior Gaming Inspector in 2007. ECF No. 49-1, ¶ 17.

On May 31, 2014, Jack Coppola ("Coppola"), who was Plaintiff's supervisor at the time, retired from the Seneca Niagara Casino, creating an opening for that position. ECF No. 49-1, ¶ 23. Pending the new hire, Darrell Thompson ("Thompson") acted as Site Supervisor at both Buffalo Creek and Seneca Niagara Casinos. ECF No. 50-17 at 69. Plaintiff applied for the Site Supervisor position at Seneca Niagara Casino, along with eight other applications. ECF No. 49-1, ¶ 26. Plaintiff was interviewed by Art Askins ("Askins") and his boss, Jim Nielsen ("Nielsen"), Acting Director of the Gaming Division. ECF No. 49-1, ¶ 30. On September 12, 2014, Nielsen forwarded their top three candidates for the Site Supervisor position to the NYSGC Executive Director: 1) Patrice Williams[1]; 2) Brian Maurer ("Maurer"); 3) Denise

[1] Patrice Williams ("Williams"), Plaintiff's co-worker, filed a sex-discrimination and retaliation lawsuit for being passed over for the same promotion for Site Supervisor. *Williams v. NYSCG*, 19-cv-720. The pending motions for summary judgment in that case are addressed in a separate Decision & Order.

Pinker. ECF Nos. 49-1, 50-37. On October 3, 2014, the NYSGC Executive Director, who ultimately decided who was to be promoted, directed Nielsen to offer the position to Mauer. ECF No. 49-1, ¶ 40; ECF No. 50-37; ECF No. 49-1, ¶ 42; ECF No. 5068, ¶ 159.

On October 17, 2014, the New York State Civil Service Staffing Division notified Amanda Hoffman ("Hoffman"), Director of Human Resources, that the 2014 posting for the Site Supervisor position was invalid due to the "C" qualifications not meeting the required minimum qualifications. ECF No. 49-1, ¶ 51. Hoffman suggested that they seek approval of an option allowing promotion to Site Supervisor based on five years of experience as a Senior Gaming Inspector. ECF No. 50-61 at 2. On December 1, 2014, the revised proposal was approved by Civil Service. ECF No. 49-1, ¶ 64. The approved notice of vacancy was re-posted and Plaintiff, Mauer, Williams, and three other individuals applied. ECF No. 49-1, ¶ 66. Following interviews, Askins conveyed to Nielsen his opinion of the top three applicants: (1) Maurer; (2) Denise Pinker; (3) Williams. ECF No. 65-41 at 2. The NYSGC Executive Director ultimately selected Maurer for the position. ECF No. 49-8, ¶ 25.

In the meantime, on November 10, 2014, Plaintiff and Williams each filed a Charge of Discrimination with the EEOC alleging gender/sex-based discrimination. ECF No. 50-2; *Williams v. New York State Gaming Commission*, 19-cv-00722, ECF No. 1-1 at 2-6.

In August 2015, Maurer went on leave for two weeks. In his absence, Senior Inspectors were told to report to Thompson. ECF No. 65-66 at 128-129; ECF No. 50-

10 at 129. On August 6, 2015, Plaintiff emailed Askins and copied in Williams and Nielsen inquiring why a Senior Inspector wasn't asked to perform Maurer's supervisory duties while he was away, as Maurer had done in the past when Site Supervisor Coppola was absent. ECF No. 49-3 at 37. Askins responded, in part:

> As a result of your EEOC complaint, it has come to our attention that even the mere selection of a person to perform supervisory duties may expose our agency to discrimination charges. The process may be considered "grooming" a person for a role and therefore, such assignments must be done through a formal selection process that is non-discriminatory, according to EEOC Investigator Maureen Kielt.

ECF No. 49-3 at 37. Based on these communications, on August 18, 2015, Plaintiff filed a second Charge of Discrimination alleging retaliation. ECF No. 50-3.

On November 29, 2018, the EEOC determined that there was reasonable cause supporting both of Plaintiff's charges. ECF No. 50-4; ECF No. 50-5.

With respect to the spoliation issue, on December 3, 2014, the NYSGC's Office of Counsel sent an email to management and staff at the Seneca Niagara Casino advising them that since NYSGC had been served with two EEOC complaints regarding selection of the Site Supervisor position, all recipients were directed to preserve information in their possession or control that could be relevant to the matters under investigation and to provide copies of same to counsel. ECF No. 50-51 at 2. On December 12, 2014, Maurer, according to his testimony, destroyed "old security reports" and "old compliance check reports" per routine records retention policy. He testified that he could not recall whether he had destroyed anything else. ECF No. 50-20 at 204-205.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. 636(b)(1), this Court must make a *de novo* determination of those portions of the R&R to which objections have been made. Objections to a report and recommendation "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *United States v. Hunt*, 440 F. Supp. 3d 221, 224 (W.D.N.Y. 2020) (quotation omitted); *see Briggs*, 215 F. Supp. 3d at 215; Loc. R. Civ. P. 72(b) ("Written objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identity the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report and recommendation only for clear error. *Blackhawk v. Hughes*, No. 9:20-CV-0241(LEK/TWD), 2021 WL 752838, at *1 (N.D.N.Y. Feb. 26, 2021). A district court "may accept, reject, or modify the recommended disposition [in the R&R]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1)(C).

"Moreover, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Hunt*, 440 F. Supp. 3d at 224 (quotation omitted).

## DISCUSSION

### I. Summary Judgment

"The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citations omitted). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the non-moving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation omitted). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

"If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vann*, 72 F.3d at 1049. Thus, "[i]n assessing [a summary judgment] motion, a court need not analyze or articulate every legal or factual theory on which the plaintiff could potentially prevail at trial." *Ortiz v. Stambach*, 657 F. supp. 3d 243, 257 (W.D.N.Y. 2023). Rather, "[i]f the court is satisfied that at least one material factual dispute exists, summary judgment must be denied." Id. (citing *Bonnie & co. Fashions v. Bankers Tr. Co.*, 170 F.R.D. 111, 121 (S.D.N.Y. 1997) ("[l]t is basic, black-letter law that the existence of even one disputed issue of material fact renders a grant of summary judgment inappropriate . . .")).

Defendant's filing objects, inter alia, to Judge Schroder's recommendation to deny NYSGC's motion for summary judgment relating to Plaintiff's sex discrimination and retaliation claims. ECF No. 79. Defendant argues that the evidence does not support an inference of discrimination and Plaintiff has not adduced evidence that Defendant's legitimate, non-discriminatory reason for hiring Maurer, was or could be pretextual. The Court disagrees.

**A. Sex Discrimination Claim**

A Title VII sex discrimination claim is analyzed under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) when the disparate treatment claim is based on circumstantial evidence. *Ames v. Ohio Dept of Youth Services*, 605 U.S. 303, 306 (2025). To establish a prima facie case, Plaintiff must

show that (1) she was within a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination. *Zito v. Fried, Harris, Shriver & Jacobson, LLP,* 896 F.2upp.2d 378, 393 (S.D.N.Y. 2012) (citing *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010)). Should Plaintiff make the initial prima facie showing, the burden then shifts to the Defendant to put forth a legitimate, non-discriminatory reason for their action(s). *Ames*, 605 U.S. 303, 309. And should the employer make such a showing, "the plaintiff must then have a 'fair opportunity' to show that the stated justification 'was in fact pretext' for discrimination. A plaintiff 'may succeed . . . either directly by persuading the court that a discretionary reason more likely motivated the employer or indirectly by a showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (citations omitted).

After considering Defendant's objections, the Court accepts the proposed findings and recommendations in the R&R with respect to summary judgment for Plaintiff's gender discrimination claim. For the reasons set forth in Judge Schroeder's R&R, ECF No. 74, the parties' cross motions for summary judgment regarding the gender discrimination claim, are denied.

"For most plaintiffs, the first step of the *McDonnell Douglas* framework—the prima facie burden – is not onerous. A plaintiff may satisfy it simply by presenting evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful

discrimination." *Ames*, 605 U.S. at 309 (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254) (internal quotation marks omitted). Here, there is no dispute that Plaintiff meets the first three elements of their prima facie case: that she was within a protected class, that she was qualified for the position, and that she was subject to an adverse employment action. Defendant argues that Plaintiff cannot make a showing that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. The Court disagrees.

The Court finds that there is sufficient evidence to permit a jury to reasonably conclude that the decision to promote Maurer, and not Plaintiff, to Site Supervisor, was due to circumstances giving rise to an inference of sex discrimination. Coppola's alleged preferential treatment of Maurer, providing him training and supervising opportunities that Plaintiff and others did not receive, Thompson's alleged statements about how women usually make bad supervisors because they overcompensate, ECF No. 50-16 at 59-60, Thompson's negative view of Plaintiff, and the fact that there have never been any female supervisors since 1999 when NYSGC opened, ECF No. 50-68, ¶ 151, are some of these alleged circumstances that could permit a jury to reasonably infer that the ultimate decision to promote Maurer and not Plaintiff was due to sex discrimination.

Plaintiff having made the initial prima facie showing, the burden then shifts to Defendant to set forth a legitimate, non-discriminatory reason for their action. The Court agrees with Judge Schroeder's recommendation that NYSGC has met its burden of production here, citing Plaintiff's poor interview, negative performance

reviews from supervisors, and other criticisms with respect to Plaintiff. ECF No. 74 at 58; ECF No. 49-2 at 16-17.

The Court further agrees with Judge Schroeder that under the *McDonnell Douglas* framework, Plaintiff presents sufficient evidence for a reasonable juror to conclude that Defendant's stated justification was pretextual. For the reasons discussed above, the circumstances surrounding NYSGC's ultimately successful attempt to modify the minimum qualifications for the Site Supervisor position to allegedly benefit Maurer over Plaintiff and others, and other reasons explained in detail in Judge Schroeder's R&R, the Court concludes that there are triable issues of material fact that compel a denial of the cross motions for summary judgment regarding Plaintiff's gender discrimination claim.

**B. Retaliation**

After considering Defendant's objections, the Court accepts the proposed findings and recommendations in the R&R with respect to summary judgment for Plaintiff's retaliation claims. For the reasons set forth in Judge Schroeder's R&R, ECF No. 74, the parties' cross motions for summary judgment are denied.

"Title VII prohibits discrimination against an employee because [s]he has opposed any practice made an unlawful employment practice." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 219-220 (E.D.N.Y. 2014) (citing 42 U.S.C.A. § 2000e-3(a)) (internal quotation marks omitted). Retaliation claims are evaluated under the *McDonnell Douglas* framework discussed above. *Id.*

To establish a prima face case, Plaintiff must show that (1) she engaged in

protected activity; (2) that the employer was aware of the protected activity; (3) that plaintiff suffered a materially adverse employment action; and (4) that there was a causal connection between the adverse employment action and the protected activity. *Id.* at 221. Here, it is not in dispute that Plaintiff has made a showing of the first two elements. Plaintiff filed her first charge of discrimination with the EEOC on November 10, 2014, and multiple individuals at NYSGC were aware of it. ECF No. 50-2 at 212-213; ECF 50-19 at 113-114.

"To establish an adverse employment action for purposes of a retaliation claim, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Pompey v. County of Westchester*, 2025 WL 2723868, at *14 (S.D.N.Y. 2025) (internal quotation marks omitted).

Plaintiff alleges that NYSGC's denial of her request to handle supervisory duties while Maurer was away for two weeks, constituted retaliation. On August 6, 2015, Plaintiff emailed Askins, copying in Williams and Nielsen, inquiring why a Senior Inspector wasn't asked to perform Maurer's supervisory duties while he was away, as Maurer had done in the past when Site Supervisor Coppola was absent. Askins responded, in part: "As a result of your EEOC complaint, it has come to our attention that even the mere selection of a person to perform supervisory duties may expose our agency to discrimination charges. The process may be considered 'grooming' a person for a role and therefore, such assignments must be done through

a formal selection process that is non-discriminatory, according to EEOC Investigator Maureen Kielt." ECF No. 49-3 at 37.

NYSGC asserts that this denial did not constitute an adverse employment action and, further, was the result of legitimate, non-discriminatory reasons. ECF No. 64 at 24-25. The Court agrees with Judge Schroeder's recommendation that such conduct denying a training opportunity that could potentially lead to a promotion constitutes an adverse employment action under the law. *See Pompey*, 2025 WL 2723868, at *15; *see also Latif v. City of New York*, 2024 WL 1348827, at *7 (S.D.N.Y. 2024); *Krul v. DeJoy*, 705 F. Supp. 3d 5, 44 (N.D.N.Y. 2023).

As to the fourth element, Plaintiff has made a sufficient showing to establish a prima face case of retaliation. The language of the email itself clearly states that this conduct "[wa]s a result of your EEOC complaint." ECF No. 49-3, p. 37.

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate a legitimate, non-discriminatory reason" for their action. *Pompey*, 2025 WL 2723868, at *14 (internal quotation marks and citations omitted). Assuming arguendo that Defendant satisfies its burden by claiming that its conduct was a universally applied corrective action, ECF No. 49-2, at 29, the burden then shifts back to Plaintiff to show that Defendant's action was, in reality, motivated by discriminatory retaliation. *Pompey*, 2025 WL 2723868, at *14. "Significantly, a plaintiff alleging retaliation in violation of Title VII must show at the final step of the analysis that retaliation was a 'but-for' cause of the adverse action, not simply a 'substantial' or 'motivating' factor in the employer's decision." *Id.*

(quoting *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F.Supp. 3d 51, 70 (S.D.N.Y. 2016)) (citation omitted).

This Court agrees with Judge Schroeder's recommendation that there is a triable issue of material fact as to whether the alleged adverse employment action, despite defendant's claim that it was a corrective measure, was, in fact, motivated by Plaintiff's EEOC filing. ECF No. 74 at 67. For instance, Becky Duryea, a Senior Inspector at Akwesasne Mohawk Casino, testified that she had been performing Site Supervisory duties since 2018. ECF No. 65-11 at 54-92. Scott McClear, Manager of Indian Gaming, testified that while Thompson, Site Supervisor at Buffalo Creek, was absent, Gaming Inspectors and Senior Gaming Inspectors, were handling supervisory duties during a period in 2024. ECF No. 65-17 at 27. With these alleged facts, a reasonable juror could determine that Defendant's justification of their action as a universally applied corrective measure, lacked credence, was pretextual, and, in fact, motivated by discriminatory retaliation. In conclusion, the cross motions for summary judgment with respect to Plaintiff's retaliation claim, are denied.

**C. Spoliation**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). To succeed on a spoliation claim, the party seeking sanctions must prove by a preponderance of the evidence: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the

records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Lipsch Group, Inc. v. ePRO e-Commerce Limited*, 880 F.3d 620 (2d Cir. 2018) (internal quotation marks omitted).

Here, Maurer destroyed "old security reports" and "old compliance check reports". He could not recall whether he had destroyed anything else. ECF No. 50-20 at 204-205. NYSGC opposes a finding of spoliation due to an insufficient showing that the destroyed documents were relevant and, therefore, obligated to be preserved. ECF No. 79 at 2-5. Plaintiff argues, inter alia, that NYSGC's actions were grossly negligent and, therefore, justify an inference of relevancy, an obligation to preserve, and a finding of spoliation. ECF No. 85 at 1-7. The Court agrees with Defendant.

The scope of the duty to preserve lies in relevance. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-218 (S.D.N.Y. 2003) And certainly, what is relevant is broadly defined. Nevertheless, the litigant is not obligated to preserve every document in their possession. *Id.* at 217. "What is the scope of the duty to preserve? Must a corporation, upon recognizing the threat of litigation, preserve every shred of paper, every e-mail or electronic document, and every backup tape? The answer is clearly, no." *Id.* at 217 (internal quotation marks omitted).

Plaintiff makes no argument as to how the destroyed security reports and compliance check reports are at all relevant to this case. For example, there is no argument that compliance check reports generally contain information "A" and

information "A" is relevant to this litigation because of reason "B". Nor does Plaintiff make any argument as to what other documents, if any, that may have been shredded by Maurer could be relevant. Without a sufficient showing of relevance by Plaintiff, which is her burden, there can be no finding of spoliation.

Plaintiff argues, consistent with Judge Schroeder's R&R, that Maurer's destruction of records was grossly negligent and, consequently, justifies an inference of relevance. Indeed, "a showing of gross negligence in the destruction … of evidence can stand[ ] alone to satisfy [ ] the relevance factor." *ELG Utica Alloys v. Niagara Mohawk Power Corp.*, 144 F.4th 360, 375 (2d Cir. 2025) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109) (internal quotation marks omitted).

The circumstances here, however, do not rise to the level of gross negligence. In *Utica Alloys*, ELG failed to initiate a litigation hold and destroyed 23,020 pounds of documents despite their internal policy to not destroy any documents. *Utica Alloys*, 144 F.4th 360, 375. There were no records or evidence as to what was destroyed. *Id.* Here, a litigation hold had been initiated by NYSGC's Office of Counsel several days prior. ECF No. 50-51. Maurer testified that he shredded old security reports and compliance check reports per records retention policy after receiving permission from Thompson and McLear. ECF No. 50-20 at 202-203. And although Maurer concedes that he does not recall whether anything else was destroyed, ECF No. 50-20 at 205, overall, these circumstances do not support a finding of gross negligence and, therefore, does not permit an inference of relevance. In the absence of any showing of

relevance, this Court finds that Plaintiff has failed to meet her burden to support her claim of spoliation.

## CONCLUSION

For the forgoing reasons, the Court accepts and adopts Judge Schroeder's recommended disposition as to the parties' cross motions for summary judgment and thereby DENIES Plaintiff's and Defendant's motions for summary judgment [ECF No. 50] [ECF No. 49] as to the gender discrimination claim and the retaliation claim, but holds that NYSGC did not engage in spoliation and thereby DENIES Plaintiff's request for sanctions. [ECF No. 50]

SO ORDERED.

Dated: September 30, 2026
Rochester, New York

HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE